Presiding Judge Loken, and may it please the Court, I'm Clemens Erdahl. It's my honor to represent Cordero Seals. Mr. Seals is currently serving a 30-year sentence. Like the Supreme Court case of United States v. Barrage, this case involves the application of the causation requirement under the serious injury enhancement of section 841b1c. Thankfully, in the case at bar, the overdose, unlike the victim in Barrage. Also, thankfully, we know from the Barrage case that the enhancement requires a showing of but-for causation. We also know the Barrage majority explicitly endorsed and implied the factual causation test as traditionally understood. Namely, the government must prove that a harm would not have occurred in the absence of, that is, but- conduct. Barrage was a mixed drug intoxication case, and it was unclear from the evidence in that case whether the drugs supplied by the defendant were a but-for cause of the victim, Banca's, death. The expert in Barrage simply could not answer whether the victim would have lived had he not taken the heroin supplied by Barrage. The facts of this case are substantially similar to Barrage, and the government in the case at bar has likewise failed to carry its burden. The victim, referred to as JV, had overdosed four days earlier and had a multiplicity of drugs in his system, including four opiates. The key issue in the case is whether or not the government satisfied the actual causation requirement as set forth in Barrage v. United States. Barrage held that at least where the use of the drug distributed by the defendant is not an bodily injury, a defendant cannot be liable under the penalty enhancement unless such use is the but-for cause of the injury. In Barrage, the Supreme Court reversed the defendant's conviction because the government itself conceded there is no evidence that Banca would have lived but for his heroin use. In short, because the government could not satisfy the but-for causation test. Likewise, in the case at bar, there is no evidence that JV would not have overdosed but for his use of heroin and fentanyl provided by Mr. Seals, because there was no evidence ruling out or otherwise excluding the acetafentanyl found in his blood as the actual cause. The expert testimony narrowed down the cause of JV's injury to morphine, fentanyl, or acetafentanyl, which is While Mr. Seals did provide JV with heroin and fentanyl, the government does not assert that there is any evidence that Seals did provide JV the acetafentanyl. The government concedes in briefing that drugs provided by Mr. Seals were not independently sufficient to cause serious bodily injury. So the only three of the of the government's brief, they say in footnote number two, the government concedes that were the court to overturn the jury's finding on the statutory enhancement for count one, well that's the remand. The government at page 43 does agree that that they're not arguing the insufficient independently sufficient cause exception to but four. So I think it's at page . . . You say that the government concedes that there's no evidence that he would have died from the drugs. The way you said it sounded wrong. Well it's a difficult . . . let me go back to that. What the quote is, it says, for the purposes of this appeal, the United States does not contend that the defendant's heroin and or fentanyl was independently sufficient to cause the injury. In this section of the brief, however, the defendant claims that in order to prove . . . wait, that's the government's brief, isn't it? Yes, that's the government's brief. All right. So that was the sentence I was referring to, Judge Erickson. What I was trying to say, Judge Locum, was that what we're dealing with here is the but four cause and this is a mixed drug intoxication case involving the very same complex issues that the Barrage Court had to address. Of course, the case would be simple if all the drugs found in J.B.'s system were attributable to the defendant because in that case, no matter the type of interaction between the drugs, the ultimate cause of injury would be the result of the drug intoxication cases where a substance not provided by the defendant is identified as a possible actual cause. The government must satisfy its evidentiary burden by putting on some evidence. Well, I get they have to put on some evidence, but in this case, there's the evidence of the expert, but there's also just the facts as it played out, right? I mean, the . . . what's the guy's name? Starts with a V. J.B. J.B. Yeah. He is walking around, talking, having no problem, is a bit antsy, gets the drugs from the defendant, goes into the restroom, mixes the drugs with water, injects the dope. He then comes back to the pump and then . . . and everything seems . . . it's all captured on video, right? And so, everything seems all copacetic right until he gets to the gas pump and then he just sort of collapses. Now, isn't that sufficient to say that but for the injection of the drugs in the restroom, he would not have had this incident? Well, I think under barrage, we have to look at what drugs were in his blood and what drugs he'd taken previously and have some evidence to rule those out. But a death case is different than a serious injury case. Here he takes Mr. Seale's drugs and immediately collapses. Now, apparently, fentanyl is often taken by addicts in order to counteract what's already in their system so they feel better or get un-sick. Well, if that happens and he collapses as a result of what he's just taken . . . Well . . . But for causation of a serious injury. Well, it could have been under barrage a contributing factor. The problem here is a lack of evidence about when he took the Acetafentanil which the government doesn't say he took. It doesn't matter. The last thing he took resulted in a collapse. But the expert is unable to say that. The expert says the Acetafentanil . . . I don't care what the expert can say. From the facts as described, that's what happened. Well, he says he's making an educated opinion that it was the timing. Judge Erickson says you can look at the facts. I would concede that the facts do not look good for Mr. Seales and that the timing is not good. However . . . I think it's a harder case if it's a death case for the government than it is if it's a serious injury case. I don't deny that it's still a but-for causation standard but you can't just take all of the analysis in the barrage death case and apply it without further analysis to a serious injury case. Well, Judge . . . How about Volkman? If we agree with Volkman, do you agree that there was sufficient showing of but-for causation? I think Volkman is somewhat different. A Sixth Circuit case. Well, you spend many, many pages on the exclusivity argument which I'm not even sure I understand. But as I understand it, it's clearly rejected in Volkman and I don't know if we don't agree with exclusivity. In other words, if we agree that a combination of drugs can result in a conviction for serious injury so long as the jury reasonably finds but-for causation . . . Well, in the briefs . . . . . . we refer to the requirement as an exclusivity rule arguing there must be some evidence excluding a substance not provided by the defendant as a but-for cause. However . . . The judge was urging us to take the restatement third of torts as applied to civil litigation . . . Right. . . . and just lift it into this context. Well, I believe that's pretty much what Judge Scalia does. As you point out with respect to a death case, after reviewing the expert's testimony, it would be more accurate to say the government must provide some evidence excluding a substance not provided by the defendant. Dr. Pruitt stated that either the morphine, the fentanyl, or the acetafentanil acting alone could have caused J.B.'s injuries. He did not state that either one could have been . . . . . . cross-examination. He acknowledged that you would have to know when and how it was taken. And he says he would have to have the concentration to know that. Well, the government does not have to prove the negatives with someone who's got all this stuff in their system on these facts. In my view, the government doesn't have to prove the negative as to all those other drugs. Well, I reserve the rest of my time, Judge, and I'll come back and we can . . . Is there any case post-Burge that . . . I think the Gaylord case is a fairly similar case to the one we have here. Wasn't that a 2255? I can't . . . Yes, it was. Well, that's a lot different context. The ultimate holding in Gaylord is that the Seventh Circuit found that the District Court erred because Gaylord alleged facts to support his claim that his counsel performed efficiently by failing to provide him with the post-mortem and forensic pathology. But underlying that, they indicate that they had to know whether the oxycodone was the actual cause or whether the drug that was already in its system was the cause. And so we had to look at those pathology reports. Here, we have a blood screening. It's not a blood test. It doesn't show the concentration. And Dr. Pruitt said that in order to say whether the acetyl fentanyl was the sole cause, he would need to know the concentration in the blood. The sole cause is not the standard, unless we take your exclusivity concept and apply it very strictly. Then the government has to rule out everything else, including last night's whiskey. Isn't that basically what you're arguing? Well, I think that again, Judge Scalia has pointed out that in many of these cases, I think he said something 46%, there are other drugs in someone's system when they overdose. An overdose is an overdose whether there's a death or not, because the penalty is for causing the injury. And so in the same way, they would have to prove that. And so your argument essentially is, is that what he took that day that he received from the defendant had to be an independent, sufficient cause to cause the serious bodily injury in this case. Right. All right. Now, here's the question that I had in looking at the evidence, and maybe it's in there and I just missed it in the record. And it is, do we know that this acetyl fentanyl was not merely a residue within the drugs that were actually sold by the, or delivered by the defendant? There was no acetyl fentanyl found in the top of the can. Yeah, in the trace can. Yeah, I see that. And the government has never argued, nor do they say there's any evidence to show that my client provided the acetyl fentanyl. So I think from what was presented to the jury, we have to take it as fact that the acetyl fentanyl was not provided by my client. And I just wanted to know that that's kind of what I had seen. And I was just, you know that, I'm sure as well as I do, that acetyl fentanyl is frequently found as a trace in mixtures that contain heroin and fentanyl. And we never had a quantity, this was just a trace residue evaluation, right? So they never really had. And that I think is the real flaw in the case, is a lack of a notable quantity in the blood, which the expert from the government says is the only way he could rule out the acetyl fentanyl as the cause of death. Because he says it by itself could be the cause of death. And it's at pages 59 through 61 of the expert testimony, which was part of the trial. Thank you. Thank you. Mr. Chatham. Thank you. May it please the Court, Counsel? I think the Court has honed in on what the key issue here is. And I want to start by highlighting exactly the posture that we're looking at here. We're not in the abstract and generally trying to determine what legally causes a death. We're talking about a jury verdict. We're talking about a finding by a jury. And so the Court here has to accept all reasonable inferences supporting the verdict. As Judge Loken pointed out, we don't need to exclude every reasonable hypothesis except guilt. And really what the Court is looking for is whether there's any interpretation of the evidence that could lead a reasonable jury to convict. And so the uncontested facts here are that the defendant sold the drugs to the victim, that the victim shot up those drugs, that being heroin and fentanyl, in the bathroom of the gas station. In your research, what would you say is the best post-Burige case applying Burige's analysis to a serious injury charge, analyzing how you do that, how you go from one context to the other? You know, there's not a whole lot of cases out there on serious injury, frankly, as far as appellate cases. Are there any? That's, I'm, when you ask the question, I'm struggling to think. I think most of the cases that I found, if not all the cases, were death cases. And I think your point in questioning Mr. Erdahl is absolutely correct that they're different. Well, then help us. How are they different, and how does it affect the analysis? Well, ultimately, they're different factually. I don't think the analysis is any different. But when you have a death case, you have necessarily a trying to take a picture of, a post-mortem picture. They get the blood. They then try to extrapolate or take the evidence that they have and then draw a conclusion from that. In an injury case, in particularly this injury case, we have more than just that post-mortem snapshot of what was in the blood. We actually have on video here, and the live witness's testimony as to the course of events. And Judge Erickson, I think you're absolutely right that the jury is looking for evidence, not just this snapshot of what was in the individual's blood sometime after the injury here. You know, that's all true. But the defendant's argument that if you look at Burrage itself, it does seem to leave the impression that as you weigh out the evidence, that you have to show that but for the introduction of the new system, or the new drug into the body systems, that the injury would not have occurred. That's the first thing. And I guess you can inferentially draw that because the guy was walking around talking and didn't seem to have any problems, and you draw from that as well the expert's testimony that Acetafentanil has a half-life, which is what, one-eighth a half-life of heroin or one-fourth a half-life of heroin? I don't remember what it was. But it's much shorter, so it . . . No, actually, there is no evidence in this record as to the half-life of Acetafentanil. And that was asked of Mr. Karras, the FBI. Was it the fentanyl that he was talking about? I believe he said that, yeah, the half-life of fentanyl was two to three hours. But he said there's been no testing done or no . . . there's no research showing that. But fentanyl's faster-acting than heroin, right? Yes. And there's no evidence in this record about the Acetafentanil, if I'm mistaken on that? I'm sorry. And I think that's really the key to this entire argument with respect to the Acetafentanil. We don't know, and the jury doesn't know, there's no evidence in the record suggesting how long Acetafentanil might be detectable in the blood. It is a designer drug. It's one of those analogs of fentanyl. And so, at this point, there is no evidence as to how long that might stay in the blood. It could stay in the blood for a day or be detectable in that way. We have no idea. The jury had no idea. And that's sort of a critical fact here, is that what the jury had . . . and again, we're looking at a jury finding. The jury found that the heroin and fentanyl that the defendant distributed, that JV used in that bathroom, and then minutes later collapsed and had severely impaired breathing and was well on the road to death, they found that that heroin and fentanyl is what caused that injury. And so, it is entirely possible that, as Judge Erickson, as you pointed out in questioning Mr. Erdahl, it's entirely possible that the substance also contained Acetafentanil. We just don't know. What we know is that the substance, in fact, contained heroin and fentanyl. That's what the paraphernalia tested positive for. And so, the question, though, is on a jury finding, whether there's any reasonable hypothesis. We don't know if it was in the substance. It could have been from something, as I mentioned, since we don't know the half-life of the substance, it could have been from something he had taken the night before and still went in the blood. The jury wasn't required to find, as a matter of fact, that the substance, that the Acetafentanil was in the substance that he had sold at 355 or whatever it was, whatever time the actual transaction occurred on November 4th. The jury here found that the substance that was distributed by the defendant was heroin and fentanyl and that it was used. And that's entirely consistent with the physical evidence and Mr. Viner's testimony. Just humor me on this. I think Burrage stands for the proposition that if, in fact, the second ingested drug is a mere contributing factor to the death of the serious bodily injury, that's insufficient. And I believe that the defendant is arguing that because of the lack of quantitative analysis of blood, you cannot tell whether or not the substance sold by the defendant was a mere contributing factor to the substantial bodily injury. And I think they'd contribute, that they would, in fact, concede that that's true because just the timing of it is he collapses at the gas pump. They can't really argue that it didn't play any role. But what they're saying is you need to establish, but have failed to establish, the fact that in the absence of the fentanyl, he still would have suffered this serious injury, this bodily injury. Right? That's what their argument is. I believe that's... Why are they wrong under Burrage? They're wrong under Burrage under the facts of this case because we don't know. There's an entirely reasonable interpretation of the evidence that that acetyl fentanyl was there, as Your Honor described before, while he was in the hospital. If that is in his system and it's not caused the injury, and that's entirely consistent with Dr. Pruitt's testimony, which is whatever the last opiate he took, that's what caused the injury. That's the gist of that testimony and that's what he testified to. And why was that? And was the problem in Burrage really the lack of expert testimony that tied that together? I believe so. And realistically, in a death case, that's why I mentioned before that death cases are a little different than these injury cases. We get that death cases are different. We say that all the time. The problem with this is the enhancement in the statute says death or serious bodily injury, right? It does. Yeah. And so really the analysis must necessarily be the same, doesn't it? I would agree the legal analysis is the same. We're applying the same but-for causation test. It's just that the facts of the cases as they arrive and the conclusions that have to be drawn are just naturally going to be different. As I mentioned, postmortem toxicology and postmortem testimony by a medical examiner oftentimes is going to be really heavily focused on the concentration of the drugs in the person's system. That's just what they're going to have to do. And factually, it's going to be different than this case because if you think about a postmortem toxicology situation, they can take all the blood that they want, all the blood that they need. What happens here is JV goes to the hospital. He gets some blood taken. They test as much of it as they need to do their test. All that's left is like a thimble full, I think is what Mr. Karras testified. And then he's out of the hospital and he leaves of his own accord. So the government only has the blood, the tiny little bit that was there and there's not enough there to do a quantification. So that's why it's different in that factually speaking, you're going to have to look at the entire picture, which you would in a death case as well, but you just can't pin the entire result on whether an injury was caused by a particular substance based on a tiny amount of blood that was taken at some undetermined time after the injury occurred. And that's Dr. Pruitt's testimony with respect to the need for determining the quantification of a particular substance or you need to know how much the That would be at the time of the injury. This blood was taken sometime substantially after. It could have been an hour later. And obviously the substances are being processed out of the blood and you're not getting the same snapshot as what had happened. Well, actually with these particular drugs, given the enzymes in the blood itself, if you delay two weeks to test it, there's still some ongoing changes in the drugs, right? I mean, isn't that one of the things they talk about opiates generally is that they're fairly unstable. They break down into heroin breaks down to morphine almost immediately and so does fentanyl. And then they're left with these trace elements, but like with alcohol, it stops breaking down once you take the blood out of the body. And there's apparently some period of time where those drugs within the blood continue to metabolize, even in the absence of the blood being actually oxygenated. And they only only stop changing when the blood becomes completely anoxic, which is some period of time, right? So if we test that blood, you know, five minutes later after it's drawn and we tested an hour later that there is some minor difference is that that's what I understand the science to be. But maybe it's pseudoscience. I think we're outside the context of the record record. I think you're general. I'm not sure why you accepted Judge Erickson's description of what Burge held. It seems to me that famous hypothetical makes it a straw that broke the camel's back analysis appropriate. Yes. And that's what we argued here. And that's what we are arguing. He stated the holding in Burge and you didn't challenge it. Perhaps I misunderstood the question, but that's that's absolutely what we're arguing here. We're talking about the straw that broke the camel's back. And what I understood him to say is if the if the defendant's drug just just was a contributing factor, the government loses. And I don't think that's what Burge the analysis, if you play it out, including the hypothetical, I don't think that's what Burge said. I think the reason I answer the question the way I did, and when you talk about a contributing factor, it's looking back to the pre Burrage or Burge case law where this court had held that it only needed to be some factor contributing to the end result. So when I when I hear the term contributing factor, it's a sort of term of art. That's true. But I'm not I'm not sure how much of the prior law was overruled by. Well, I think when it comes down to it, when when we have to look here, it is the but for cause. And so whether one phrases it as, well, this was the straw that broke the camel's back, therefore, it contributed to the death and that that would be a case if he wouldn't have taken that drug. If he wouldn't have taken if the government proves that he wouldn't have or satisfies to the jury satisfaction, reasonable satisfaction that he wouldn't have collapsed if he hadn't taken the drug that the defendant just sold or transferred to him. Why isn't that sufficient under Burge? That is sufficient. That is that is what Burge says. And that's what we proved here. Yes, yes, that's that's correct. So, I mean, contributing factor for the acetyl fentanyl, the person who sold him J.V. acetyl fentanyl four days earlier, if charged with this crime, would have a heck of a good argument under Burge. Yes, that would be a problem. They're both contributing factors, but one of them is but for. That's correct. So I believe I've covered all of the arguments that that I intended to cover. So if there are no additional questions, I'll rely on the brief and ask that the court affirm. Thank you. Just on that point, there was no evidence that he was provided the acetyl fentanyl that was in his bloodstream four days earlier. There was evidence he had overdosed. Yeah, OK. The four days is what scared me there. I mean, if it if it was four hours. Yeah, it's to me that if you were defending the the the seller of acetyl fentanyl, whether it was hours or days before this transaction, you would you would be making about the same argument. It would be much more factually plausible or whatever the word would be. May I follow up on a couple of questions? I realize some of my time was used up. On page 891 of Barrage, Judge Scalia does reject the contributing cause and the multiple independence sufficient causes which were urged by the government at that time. I following up on the fentanyl analog is the failure to get the blood draw or to have the proper evidence before the court is not something that can be blamed on the on the defendant. It's the government's burden to put forth the evidence necessary. And in this case, they they had no evidence to show that the acetyl fentanyl was not the cause. And in fact, their own expert said by itself, it could have been the cause. OK, but the jury. But but what happened is that that my my esteemed colleague said that the jury didn't have evidence on that. This is our point. The jury was left to speculate and the burden was on the government to put that evidence on that. That would be the point that I wanted to make, Your Honor. Thank you. Thank you, counsel. Case has been well briefed and argued and we'll take it under advisement.